Philippe Zimmerman (PZ-7744)
MOSES & SINGER LLP
The Chrysler Building
405 Lexington Avenue
New York, NY 10174-1299
Telephone: (212) 554-7800
Facsimile: (212) 554-7700

Jeffrey L. Van Hoosear (*pro hac vice pending*)
Email: jvanhoosear@kmob.com
Lynda J. Zadra-Symes (*pro hac vice pending*)
Email: ljs@kmob.com
Jared C. Bunker (*pro hac vice pending*)
Email: jared.bunker@kmob.com
KNOBBE, MARTENS, OLSON & BEAR, LLP
2040 Main Street
Fourteenth Floor
Irvine, CA  92614
Phone: (949) 760-0404
Facsimile: (949) 760-9502

*Attorneys for Defendant*
CHEMPLEX AUTOMOTIVE GROUP, INC.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SAS GROUP, INC., a New York corporation,<br><br>        Plaintiff/Counterclaim Defendant,<br><br>-against-<br><br>CHEMPLEX AUTOMOTIVE GROUP, INC., a California corporation,<br><br>        Defendant/Counterclaim Plaintiff. | Civil Action No. 07-CIV-10262 (SCR/GAY)<br><br>**FIRST AMENDED ANSWER TO COMPLAINT WITH COUNTERCLAIMS**<br><br>**JURY TRIAL DEMAND** |

Defendant, Chemplex Automotive Group, Inc. ("Chemplex"), by its attorneys, hereby replies to the Complaint of Plaintiff, SAS Group, Inc. ("SAS"), as follows:

## I. JURISDICTION AND VENUE

1. Responding to Paragraph 1 of the Complaint, Chemplex admits that this Court has jurisdiction over claims relating to trademarks and trade dress, but denies that any grounds exist for SAS's claims. Chemplex admits that jurisdiction is appropriate in this Court pursuant to 28

U.S.C. §§ 1331, 1338, 2201(a), 2202 and CPLR § 302. Chemplex denies any remaining allegations contained in Paragraph 1 of the Complaint.

2.  Responding to Paragraph 2 of the Complaint, Chemplex admits that venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) and (c). Chemplex denies any remaining allegations contained in Paragraph 2 of the Complaint.

## II. THE PARTIES

3.  Chemplex lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 3 of the Complaint, and on that basis denies them.

4.  Chemplex admits that it is a California corporation with its principal place of business located at 2061 Emery Avenue, La Habra, California 90631, that it is in the business of manufacturing, marketing, selling and distributing automotive products, and that it markets a product under the trademark "DYNO-TAB." Chemplex denies any remaining allegations contained in Paragraph 4 of the Complaint.

## III. FACTUAL ALLEGATIONS

5.  Responding to Paragraph 5 of the Complaint, Chemplex admits that is sells an automotive product under the trademark DYNO-TAB for use in cars. Chemplex admits that the trademark DYNO-TAB and the trade dress of its products sold under the DYNO-TAB trademark are recognized by consumers nationally, including in the State of New York. Chemplex denies any remaining allegations contained in Paragraph 5 of the Complaint.

6.  Responding to Paragraph 6 of the Complaint, Chemplex admits that it operates a website whereby consumers, including consumers in the State of New York, can order products marketed under the trademark DYNO-TAB by placing orders via email and through the internet, and have such orders filled and sent to the consumer at their residence or place of business, including consumers in the State of New York. Chemplex admits that it has accepted sales orders for some of its automotive products marketed under the trademark DYNO-TAB from customers in the State of New York via Chemplex's website and, as a result of such sales orders, has shipped some of its automotive products marketed under the trademark DYNO-TAB to

customers in the State of New York. Chemplex denies any remaining allegations contained in Paragraph 6 of the Complaint.

7. Chemplex lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 7 of the Complaint, and on that basis denies them.

8. Responding to Paragraph 8 of the Complaint, Chemplex admits that, in response to inquiries initiated by SAS, it has directed emails to persons who have represented themselves as principals or agents of SAS. Chemplex admits that, in response to requests by SAS, it has sent information relating to the Chemplex line of automotive products to SAS at a location in New York. Chemplex denies any remaining allegations contained in Paragraph 8 of the Complaint.

9. Responding to paragraph 9 of the Complaint, Chemplex admits that an officer of Chemplex approached an executive of SAS at a recent trade show, notified SAS of Chemplex's intellectual property rights associated with its automotive products and of Chemplex's belief that SAS's product packaging and other materials displayed at the trade show violated Chemplex's intellectual property rights. Chemplex denies any remaining allegations contained in Paragraph 9 of the Complaint.

10. Responding to paragraph 10 of the Complaint, Chemplex admits that its counsel sent a letter to SAS on or about November 1, 2007 demanding that SAS cease and desist marketing, selling, or offering for sale products whose packaging or promotional material is confusingly similar to the packaging or promotional material of Chemplex's products. Chemplex denies any remaining allegations contained in paragraph 10 of the Complaint and respectfully refers the Court to the referenced letter for its terms.

## IV. <u>FIRST CAUSE OF ACTION</u>

11. Chemplex repeats and realleges its responses to Paragraphs 1-10 of the Complaint as though fully set forth herein.

12. Chemplex lacks sufficient information to form a belief as to the truth or falsity of the allegations contained in Paragraph 12 of the Complaint, and on that basis denies them.

13. Responding to Paragraph 13 of the Complaint, Chemplex admits that it markets, sells and distributes a line of automotive products utilizing the trademark DYNO-TAB, as well as other automotive products.

14. Responding to paragraph 14 of the Complaint, Chemplex admits that its counsel sent a letter to SAS on or about November 1, 2007, demanding that SAS cease and desist marketing, selling, or offering for sale products whose packaging or promotional material is confusingly similar to the packaging or promotional material of Chemplex's products. Chemplex denies any remaining allegations contained in Paragraph 14 of the Complaint and respectfully refers the Court to the referenced letter for its terms.

15. Responding to Paragraph 15 of the Complaint, Chemplex admits that it asserts that SAS is infringing at least one of Chemplex's trademarks and the trade dress of at least one of Chemplex's automotive product lines. Chemplex denies any remaining allegations contained in Paragraph 15 of the Complaint.

16. Responding to Paragraph 16 of the Complaint, Chemplex admits that its counsel sent a letter to SAS on or about November 1, 2007 demanding that SAS cease and desist marketing, selling, or offering for sale products whose packaging or promotional material is confusingly similar to the packaging or promotional material of Chemplex's products. Chemplex denies any remaining allegations contained in Paragraph 16 of the Complaint and respectfully refers the Court to the referenced letter for its terms.

17. Chemplex denies the allegations contained in Paragraph 17 of the Complaint.

18. Chemplex denies the allegations contained in Paragraph 18 of the Complaint.

## V. AFFIRMATIVE DEFENSES

Chemplex asserts the following affirmative defenses to the claims asserted by SAS in its Complaint.

### FIRST AFFIRMATIVE DEFENSE

19. SAS fails to state a claim upon which relief can be granted.

**SECOND AFFIRMATIVE DEFENSE**

20.　　SAS's claims are barred by the doctrine of unclean hands.

## VI. COUNTERCLAIMS

Defendant/Counterclaim Plaintiff, Chemplex Automotive Group, Inc. ("Chemplex"), hereby brings the following Counterclaims against Plaintiff/Counterclaim Defendant, SAS Group, Inc. ("SAS"):

## VII. THE PARTIES

1.　　Chemplex is a California corporation having a principal place of business at 2061 Emery Avenue, La Habra, California 90631.

2.　　SAS alleges that it is a New York corporation with its principal place of business at 220 White Plains Road, Tarrytown, New York in Westchester County.

## VIII. JURISDICTION AND VENUE

3.　　This action arises under the trademark laws and the copyright laws of the United States. This court has jurisdiction pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338. The court likewise has supplemental and/or ancillary jurisdiction over the remaining claims in that all of them arise out of a common nucleus of operative facts.

4.　　Venue is proper in this district pursuant to 28 U.S.C. § 1391, because SAS alleges to have a principal place of business in this judicial district, SAS is doing business in this judicial district and a substantial part of the events giving rise to the claims arose and occurred within this judicial district.

## IX. FACTS COMMON TO ALL COUNTERCLAIMS

5.　　Chemplex manufactures and sells a line of proprietary compositions for use in engines and engine oil and fuel (the "Chemplex Products"). The Chemplex Products are sold under the trademark BEATS THE BOTTLED BOOSTERS (the "Chemplex Mark"), as well as other marks. In addition, Chemplex has marketed and sold the Chemplex Products in packaging having a distinctive trade dress (the "Chemplex Trade Dress"). Also, Chemplex is the owner of all copyrights in the product sheets and product cards for the Chemplex Products (the "Chemplex

Copyrighted Materials").

6. The Chemplex Copyrighted Materials include the "Dyno-Tab High Performance Octane Booster" product sheet (the "Booster Product Sheet"). The Booster Product Sheet was created at least as early as 2005. On or about December 27, 2007, Chemplex registered with the U.S. Copyright Office its original Booster Product Sheet, which work was assigned Registration No. TX 6-817-111.

7. The Chemplex Copyrighted Materials also include the "Dyno-Tab Fuel Stabilizer" product sheet (the "Stabilizer Product Sheet"). The Stabilizer Product Sheet was created at least as early as 2005. On or about December 27, 2007, Chemplex registered with the U.S. Copyright Office its original Stabilizer Product Sheet, which work was assigned Registration No. TX 6-817-113.

8. The Chemplex Copyrighted Materials also include the "Octane Booster Product Card" (the "Booster Product Card"). The Booster Product Card was created at least as early as 2005. On or about January 2, 2008, Chemplex registered with the U.S. Copyright Office its original Booster Product Card, which work was assigned Registration No. TX 6-817-335.

9. The Chemplex Copyrighted Materials also include the "Fuel Stabilizer Product Card" (the "Stabilizer Product Card"). The Stabilizer Product Card was created as early as 2005. On or about January 2, 2008, Chemplex registered with the U.S. Copyright Office its original Stabilizer Product Card, which work was assigned Registration No. TX 6-817-340.

10. The Chemplex Trade Dress includes the overall appearance of Chemplex's packaging shown in Exhibits "A" through "D" attached hereto, including at least the use of a blister pack containing a tablet attached to a bottle-shaped card or a card displaying a picture of a bottle. By virtue of the substantial use, sale and promotion of the Chemplex Products, the Chemplex Trade Dress has acquired great value as an identifier of the source of the Chemplex Products and distinguishes those products from others. The Chemplex Trade Dress is extremely valuable to Chemplex as an identifier of its products and of the substantial customer goodwill Chemplex has earned over years in the market.

11. Chemplex is the owner of U.S. Federal Trademark Application No. 77/047809, for the Chemplex Mark, which application has been allowed by the United States Patent and Trademark Office. Since at least as early as 2005, and well before the acts of SAS complained of herein, Chemplex has used its Chemplex Mark extensively in connection with the marketing and sale of the Chemplex Products.

12. SAS obtained some of the Chemplex Copyrighted Materials, including the Booster Product Sheet, the Stabilizer Product Sheet, the Booster Product Card and the Stabilizer Product Card. SAS, without the permission or authority of Chemplex, has copied some of the Chemplex Copyrighted Materials, including the Booster Product Sheet, the Stabilizer Product Sheet, the Booster Product Card and the Stabilizer Product Card, in violation of Chemplex's rights in the Chemplex Copyrighted Materials. SAS, without the permission or authority of Chemplex, has incorporated some of the Chemplex Copyrighted Materials, including the Booster Product Sheet, the Stabilizer Product Sheet, the Booster Product Card and the Stabilizer Product Card, into product sheets and product cards for products marketed by SAS. SAS, without the permission or authority of Chemplex, has used, and continues to use, these infringing product sheets and product cards in connection with the marketing and sale of automotive products.

13. In addition, SAS, without the permission or authority of Chemplex, has infringed Chemplex's rights in the Chemplex Mark and the Chemplex Trade Dress by various acts, including the unauthorized use of the Chemplex Mark and packaging and promotional materials confusingly similar to the Chemplex Trade Dress, and the blatant copying of materials created by Chemplex. Without authorization from Chemplex, SAS has used the Chemplex Mark in product packaging and materials used in connection with the sale and advertising of automotive products that compete with Chemplex products. Without authorization from Chemplex, SAS has adopted, used and is now marketing and selling automotive products using product packaging and other materials that are confusingly similar to the Chemplex Trade Dress. Thus, SAS has created a likelihood of injury to Chemplex's business reputation, has caused a strong likelihood of confusion in the marketplace as to the source, origin, or relationship of Chemplex's and SAS's

goods, and has otherwise competed unfairly with Chemplex.

14. SAS had actual knowledge of Chemplex's rights in the Chemplex Copyrighted Materials and Chemplex's prior use and rights in the Chemplex Mark and Chemplex Trade Dress. Nevertheless, SAS adopted, used and is now marketing and selling goods using product sheets, product cards, packaging and/or other materials that infringe Chemplex's rights in the Chemplex Copyrighted Materials, the Chemplex Mark and the Chemplex Trade Dress.

15. SAS's acts complained of herein have caused injury and damage to Chemplex in an amount to be determined at trial.

## X. **FIRST COUNTERCLAIM**
### (Copyright Infringement)

16. Chemplex incorporates by reference Paragraphs 1 through 15 above as though fully set forth herein.

17. This is a claim for copyright infringement in violation of 17 U.S.C. § 501, et. seq.

18. Chemplex is the owner of all copyrights in the Booster Product Sheet, the Stabilizer Product Sheet, the Booster Product Card and the Stabilizer Product Card, which original works constitute copyrightable subject matter under the laws of the United States.

19. Chemplex has complied in all respects with 17 U.S.C. § 102, et seq., the statutory deposit and registration requirements thereof, and all of the laws governing federal copyrights, to secure the exclusive rights and privileges in and to the copyrights for the Booster Product Sheet, the Stabilizer Product Sheet, the Booster Product Card and the Stabilizer Product Card, and has filed the requisite papers and obtained, from the Register of Copyrights, Copyright Registration Number TX 6-817-111, Copyright Registration Number TX 6-817-113, Copyright Registration Number TX 6-817-335 and Copyright Registration Number TX 6-817-340 covering the Booster Product Sheet, the Stabilizer Product Sheet, the Booster Product Card and the Stabilizer Product Card, respectively.

20. Since the date of their first publication, Chemplex has been, and still is, the sole proprietor of all rights, title and interest in and to the copyrights in the Booster Product Sheet, the

Stabilizer Product Sheet, the Booster Product Card and the Stabilizer Product Card.

21. SAS had access to and actual knowledge of Chemplex's Booster Product Sheet, Stabilizer Product Sheet, Booster Product Card and Stabilizer Product Card, as well as actual knowledge of Chemplex's rights therein.

22. SAS has willfully infringed, and continues to willfully infringe, Chemplex's copyrights in the Booster Product Sheet, the Stabilizer Product Sheet, the Booster Product Card and the Stabilizer Product Card. In particular, SAS has, without the permission or authority of Chemplex, copied the Booster Product Sheet, the Stabilizer Product Sheet, the Booster Product Card and the Stabilizer Product Card and marketed a line of automotive products using product sheets, cards and/or packaging that are substantially similar to the Booster Product Sheet, the Stabilizer Product Sheet, the Booster Product Card and the Stabilizer Product Card.

23. SAS's copying of Chemplex's copyrighted designs constitutes copyright infringement proscribed under 17 U.S.C. § 501, et. seq.

24. As a result of SAS's infringement of the Booster Product Sheet, the Stabilizer Product Sheet, the Booster Product Card and the Stabilizer Product Card, Chemplex has suffered, and continues to suffer, irreparable harm and has been damaged in an amount to be determined at trial.

25. SAS's infringement has been oppressive, fraudulent, malicious, and/or in conscious disregard of Chemplex's rights and with the intent to injure Chemplex, thereby justifying an award of punitive damages.

## XI. SECOND COUNTERCLAIM
### (False Designation Of Origin)

26. Chemplex incorporates by reference Paragraphs 1 through 25 above as though fully set forth herein.

27. This is an action for false designation of origin arising under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

28. The Chemplex Mark and the Chemplex Trade Dress are used in commerce, are

non-functional, are inherently distinctive and have acquired secondary meaning in the marketplace.

29. SAS has created a false designation of origin by marketing, without the permission or authority of Chemplex, automotive products using product sheets, cards and/or packaging which incorporate the Chemplex Mark and are confusingly similar to the Chemplex Trade Dress, with the intent to compete against Chemplex, to trade upon Chemplex's reputation and goodwill and by causing confusion and mistake among customers and the public and by deceiving them into believing that SAS's products are associated with, sponsored by or approved by Chemplex, when they are not.

30. SAS had actual knowledge of Chemplex's ownership and prior use of the Chemplex Mark and the Chemplex Trade Dress, and without the consent or permission of Chemplex, has willfully violated 15 U.S.C. § 1125(a).

31. As a result of the aforementioned acts by SAS, Chemplex has suffered, and continues to suffer, irreparable harm and has been damaged in an amount to be determined at trial.

## XII. THIRD COUNTERLCLAIM

### (New York Statutory Unfair Competition)

32. Chemplex incorporates by reference Paragraphs 1 through 31 above as though fully set forth herein.

33. This is an action for unfair competition arising under New York General Business Law § 349.

34. By virtue of the acts complained of herein, SAS has intentionally caused a likelihood of confusion among the public and has unfairly competed in violation of New York General Business Law § 349.

35. As a result of the aforementioned acts by SAS, which constitute unlawful, unfair, malicious or fraudulent business practices, Chemplex has suffered, and continues to suffer, irreparable harm and has been damaged in an amount to be determined at trial.

## XIII. FOURTH COUNTERCLAIM

### (New York Common Law Unfair Competition)

36.  Chemplex incorporates by reference Paragraphs 1 through 35 above as though fully set forth herein.

37.  This is an action for common law unfair competition arising under the common law of the State of New York.

38.  Jurisdiction is founded on 28 U.S.C. §§ 1338(b) and 1367(a). Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391.

39.  By virtue of the acts complained of herein, SAS has intentionally caused a likelihood of confusion among the public and has unfairly competed with Chemplex in violation of the common law of the State of New York.

40.  As a result of the aforementioned acts by SAS, which constitute unlawful, unfair, malicious or fraudulent business practices, Chemplex has suffered, and continues to suffer, irreparable harm and has been damaged in an amount to be determined at trial.

## XIV. JURY TRIAL DEMAND

41.  Chemplex hereby demands a trial by jury of all issues so triable.

## XV. PRAYER FOR RELIEF

WHEREFORE, Chemplex hereby requests that the Court enter judgment as follows:

A.  In favor of Chemplex and against SAS on all claims for relief alleged in the Complaint and herein;

B.  That Chemplex's copyright rights in the Chemplex Copyrighted Materials be deemed valid and willfully infringed by SAS in violation of 17 U.S.C. § 501;

C.  That SAS has violated the provisions of 15 U.S.C. § 1125(a) by infringing the Chemplex Mark and the Chemplex Trade Dress, and using a false designation of origin in connection with its products;

D.  That SAS has unfairly competed with Chemplex under New York General Business Law § 349;

E. That SAS has unfairly competed with Chemplex under the common law of the State of New York;

E. That the Court award Chemplex actual damages in an amount to be determined at trial, together with interest thereon at the maximum allowable legal rate or, in the alternative, for enhanced statutory damages;

F. For disgorgement of profits attributable to the infringing conduct;

G. For attorneys' fees, expert fees and costs pursuant to 17 U.S.C. § 505, 15 U.S.C. § 1117, New York General Business Law § 349 and New York common law;

H. That the damages resulting from SAS's acts be trebled and awarded to Chemplex pursuant to 15 U.S.C. § 1117;

I. That SAS, its agents, servants, employees and attorneys, and all those persons in active concert or participation with them, be forthwith preliminarily and thereafter permanently enjoined from:

1. using, to market, advertise, or identify its products and services (including on the Internet), the Chemplex Mark, Chemplex Trade Dress or any other mark or trade dress similar thereto, that is likely to create the erroneous impression that SAS's products and/or services originate from Chemplex, are endorsed by Chemplex or are connected in any way with Chemplex;

2. copying, reproducing, creating derivative works of, distributing, using, marketing or selling the Chemplex Copyrighted Materials;

3. otherwise infringing the Chemplex Mark, Chemplex Trade Dress or Chemplex Copyrighted Materials; and

4. unfairly competing with Chemplex in any manner;

J. That SAS and its officers, agents, servants, employees, and attorneys, and all those persons in active concert or participation with them, be required to deliver up for destruction all materials embodying the Chemplex Copyrighted Materials, Chemplex Mark or Chemplex Trade Dress; and

K. That Chemplex be awarded such other and further relief as this Court may deem just and proper.

Dated: March 31, 2008

                Respectfully submitted,

                MOSES AND SINGER LLP

By: __/s/_____
    Philippe Zimmerman (PZ 7744)
    MOSES AND SINGER LLP
    The Chrysler Building
    405 Lexington Avenue
    New York, NY 10174-1299
    Telephone: (212) 554-7800

*Attorneys for Defendant*
*CHEMPLEX AUTOMOTIVE GROUP, INC.*