UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
SAS GROUP, INC., a New York corporation,     x     Civil Action No.
                                                            x     07 CV 10262 (SCR)

                         Plaintiff,       x

     -against-                               x

CHEMPLEX AUTOMOTIVE GROUP, INC., a     x
California corporation,                            x

                         Defendant.     x
-----------------------------------------------------------------x

---

## MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS

---

**HARRINGTON, OCKO & MONK, LLP**
*Attorneys for Plaintiff*
*SAS Group, Inc.*
**81 Main Street, Suite 215**
**White Plains, NY  10601**
**(914) 686-4800**
**(914) 686-4824 (fax)**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES……………………........................................................ -ii-

PRELIMINARY STATEMENT ........................................................................ 1

ARGUMENT ................................................................................................ 3

I.      12(b)(6) STANDARD ........................................................................ 3

II.     DEFENDANT'S COUNTERCLAIMS FAIL TO STATE A CAUSE OF ACTION FOR TRADEMARK INFRINGEMENT OR FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT ................................................................................. 4

     A.      Plaintiff's Senior Trademark "MOTOR UP" has Priority Over Defendant's Junior Trademark "BEATS THE BOTTLED BOOSTERS". ......................................... 5

     B.      Plaintiff's Registered Mark "MOTOR UP" is not Confusingly Similar to Defendant's Mark "BEATS THE BOTTLED BOOSTERS"................................. 7

     C.      Defendant's New Mark is Weak and not Deserving of Protection...................... 11

III.    DEFENDANT HAS FAILED TO ALLEGE A TRADE DRESS INFRINGEMENT CLAIM.......................................................................................................... 13

     A.      Defendant's Trade Dress Claim Fails for Lack of Specific Factual Allegations About the Protectable Character and Scope of its Chemplex Trade Dress........... 14

IV.     DEFENDANT HAS FAILED TO ALLEGE SUFFICIENT FACTS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT .............................................. 18

V.      DEFENDANT HAS FAILED TO ALLEGE A CLAIM FOR STATUTORY DAMAGES AND ATTORNEYS' FEES UNDER FEDERAL COPYRIGHT LAW......................... 19

VI.     DEFENDANT HAS FAILED TO STATE A CAUSE OF ACTION UNDER EITHER NEW YORK STATUTORY LAW OR NEW YORK COMMON LAW FOR UNFAIR COMPETITION ............................................................................................ 21

CONCLUSION............................................................................................... 23

# TABLE OF AUTHORITIES

**Page**

**Cases**

*24 Hour Fitness USA v. 24/7 Tribeca Fitness, LLC*, 447 F.Supp.2d 266
(S.D.N.Y. 2006 ................................................................................................ 11, 22

*Adams v. Warner Brothers Pictures Network*, 2007 WL 1959022
(E.D.N.Y. June 29, 2007) ...................................................................................... 3

*Air Cargo News, Inc. v. Tabmag Pub., Ltd.*, 2007 WL 1101183 (E.D.N.Y.
April 11, 2007) ...................................................................................................... 12

*American Cyanamid Corp. v. Connaught Laboratories, Inc.*, 800 F.2d 306
(2nd Cir. 1986) ........................................................................................................ 8

*ATSI Communications, Inc. v. Shaar Fund Ltd.*, 493 F.3d 87 (2nd Cir. 2007) ............ 4

*Aulson v. Blanchard*, 83 F.3d 1 (1st Cir. 1996) ........................................................... 4

*AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786 (6th Cir. 2004) ...................................... 8

*Avon Products, Inc. v. S.C. Johnson & Son, Inc.*, 984 F.Supp. 768 (S.D.N.Y. 1997) ................. 22

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955 (2007) ....................................... 3, 12, 15, 19

*Club Protector, Inc. v. J.G. Peta, Inc.*, 2001 WL 1217215 (N.D.N.Y.
Sept. 12, 2001) .................................................................................................... 15

*Crown Awards, Inc. v. Trophydepot*, 2003 WL 22208409 (E.D.N.Y. Sept. 3, 2003) ................. 13

*Disney v. Goodtimes Home Video Corp.*, 830 F.Supp. 762 (S.D.N.Y. 1993) .............................. 14

*Dorcely v. Wyandanch Union Tree School Dist.*, 2007 WL 2815809
(E.D.N.Y. Sept. 25, 2007) ..................................................................................... 3

*Ez-Tixz, Inc. v. Hit-Tix, Inc.*, 919 F.Supp. 728 (S.D.N.Y. 1996) ........................................... 20, 22

*Fitzpatrick v. Sony-BMG Music Entertainment, Inc.*, 2007 WL 2398801
(S.D.N.Y. Aug. 15, 2007) ................................................................................... 3-4

*Freefall Express, Inc. v. Hudson River Park Trust*, 2007 WL 2582222
(N.Y. Sup. Ct. Sept. 7, 2007) ............................................................................. 21

**Page**

*Gruner Jahr USA Pub. v. Meredith Corporation*, 991 F.2d 1072 (2nd Cir. 1993).........................8

*H.W. Carter & Sons, Inc. v. William Carter Co.*, 913 F.Supp. 796 (S.D.N.Y. 1996) ...................5

*Iqbal v. Hasty*, 490 F.3d 143 (2nd Cir. 2007) .........................................................................3

*Jamison Business Systems, Inc. v. Unique Software Support Corp.*, 2005 WL 1262095
    (E.D.N.Y. May 26, 2005) ...................................................................................................20

*Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27 (2nd Cir. 1995) .........................15

*King Research, Inc. v. Shulton, Inc.*, 454 F.2d 66 (2nd Cir. 1972) ..............................................8

*Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373 (2nd Cir. 1997) .................13, 14

*Lois Footwear v. Levi Straus*, 799 F.2d 867 (2nd Cir. 1986) .....................................................5

*Malaco Leaf, AB v. Promotion In Motion, Inc.*, 287 F.Supp.2d 355 (S.D.N.Y. 2003) ...............15

*Medical Economics Co., Inc. v. Prescribing Reference, Inc.*, 294 F.Supp.2d 456
    (S.D.N.Y. 2003) ...............................................................................................................12

*Merriam-Webster, Inc. v. Random House, Inc.*, 35 F.3d 65 (2nd Cir. 1994)................................8

*Metrokane, Inc. v. The Wine Enthusiast*, 160 F.Supp.2d 633 (S.D.N.Y. 2001) ...........................8

*Mitra v. State Bank of India*, 2005 WL 2143144 (S.D.N.Y. Sept. 6, 2005)..................................4

*Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43 (2nd Cir. 2000) .........................................8, 9

*Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 269 F.3d 114 (2nd Cir. 2001) ...............8

*OBH, Inc. v. Spotlight Magazine, Inc.*, 86 F.Supp.2d 176 (W.D.N.Y. 2000)................................5

*PaperCutter, Inc. v. Fay's Drug Co., Inc.*, 900 F.2d 558 (2nd Cir. 1990)...................................11

*Phillips v. Murdock*, 2008 WL 852019 (D.Hawaii March 28, 2008) .........................................19

*Playtex Products, Inc. v. Georgia Pacific, Inc.*, 2003 WL 21939706
    (S.D.N.Y. Aug. 12, 2003) ................................................................................................11

*Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492 (2nd Cir. 1961)....................................8, 9

**Page**

*Price Food Co. v. Good Foods, Inc.*, 400 F.2d 662 (6th Cir. 1968)................................. 15

*Ravioli v. Gannett Co., Inc.*, 327 F.Supp.2d 233 (W.D.N.Y. 2004) ........................... 4, 5

*Regal Jewelry Co., Inc. v. Kingsbridge Intern., Inc.*, 999 F.Supp. 477
    (S.D.N.Y. 1998) ......................................................................... 14

*Rothman v. Gregor*, 220 F.3d 81 (2nd Cir. 2000)............................................. 4

*Secunda v. Time Warner Cable of New York City*, 1995 WL 675464
    (S.D.N.Y. Nov. 14, 1995) .............................................................. 20

*Smith v. AVCS Intern., Inc.*, 148 F.Supp.2d 302 (S.D.N.Y. 2001) ........................... 4

*Star Industries, Inc. v. Bacardi & Co., Ltd.*, 412 F.3d 373 (2nd Cir. 2005) .................. 8

*Tactica Intern., Inc. v. Atlantic Horizon Intern., Inc.*, 154 F.Supp.2d 586
    S.D.N.Y. 2001) ........................................................................ 5

*Thompson Publishing Company, LLC v. Technology Evaluation Centers, Inc.*,
    2007 WL 2193964 (S.D.N.Y. July 27, 2007) .......................................... 3, 4

*Thompson v. V.E.W. Ltd*, 2007 WL 1746739, at *2 (S.D.N.Y. June 15, 2007)............. 3, 4, 14, 22

*Tony & Guy (USA) Ltd. v. Nature's Therapy, Inc.*, 2006 WL 1153354
    (S.D.N.Y. May 1, 2006)............................................................... 12

*W.W.W. Pharmaceutical Co., Inc. v. Gillette Co.*, 984 F.2d 567 (2nd Cir. 1993) .......... 8

*Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101 (2nd Cir. 2001) .......................... 14

**Statutes**
15 U.S.C. §1057(b) ...................................................................... 5
15 U.S.C. §1125(a) ...................................................................... 7
17 U.S.C. §504 ........................................................................ 19, 20
17 U.S.C. §505 ........................................................................ 19
28 U.S.C. §1367 ....................................................................... 23

**Rules**
Federal Rule of Civil Procedure 8(a)(2). ................................................. 19
Federal Rule of Civil Procedure 12(b)(6) ............................................. 1, 3, 4, 19

**Other Authorities**

GBL§349...................................................................................................................... 22

Plaintiff, SAS GROUP, INC. ("SAS" or "Plaintiff") as and for its motion to dismiss the Counterclaims of Defendant CHEMPLEX AUTOMOTIVE GROUP, INC. ("Chemplex" or "Defendant") pursuant to Federal Rule of Civil Procedure 12(b)(6), states as follows.

## PRELIMINARY STATEMENT

Plaintiff SAS brought this action for declaratory judgment after Defendant threatened Plaintiff with suit regarding Plaintiff's use of its own senior registered trademark "Motor Up" on Plaintiff's packaging for its fuel additive tablets. These threats by Defendant took place before November 1, 2007, and were followed-up by a letter from Defendant's California counsel threatening legal action by Defendant against Plaintiff. Defendant has admitted to such conduct in its Answer and Counterclaims in this matter.

Defendant has now filed factually and legally unsupported Counterclaims for copyright infringement, trademark infringement/false designation of origin under the Lanham Act, as well as claims for unfair competition under New York statutory law, and common law. Defendant's Counterclaims are based upon: (1) its junior registered mark "Beats the Bottled Boosters" which first obtained registration in April 2008; (2) four product cards, three of which do not even contain the "Beats the Bottled Boosters" mark (and which contain three very different images of bottles and a plastic gas can); and (3) four product sheets, two of which were registered on December 27, 2007, and two of which were registered with the copyright office on January 2, 2008, some two years after their first publication in early 2005, and over two months after Plaintiff's alleged use of such copyrighted material took place.

Defendant's Counterclaims represent nothing less than its improper attempt to gain unjustified monopoly control of the automotive fuel additive tablet market by claiming that Defendant has proprietary rights to generic aspects of Plaintiff's products and packaging.

1

Defendant's Counterclaims, however, must be dismissed as they are supported by nothing more than conclusory allegations with insufficient factual allegations to support such claims. Defendant fails to allege with any specificity how Plaintiff's senior "Motor Up" registered mark could infringe, or constitute false designation of origin as to Defendant's junior mark "Beats the Bottled Boosters". Defendant also fails to allege in its Counterclaims, with requisite specificity, any of the supposed attributes, characteristics, or specific, protectable elements which comprise its alleged "Chemplex Trade Dress" for Defendant's product line, and fails to allege how Plaintiff's "Motor Up" trade dress infringes, or represents a false designation of origin as to Defendant's supposed "Chemplex Trade Dress". Indeed, the major trade dress attribute Defendant claims, a simple see-through cellophane wrapper that allows the consumer to see the product, cannot be considered part of Defendant's trade dress as a matter of law.

Furthermore, Defendant's copyright claims fail to allege any factual allegations about what Plaintiff has supposedly copied, and Defendant fails to allege (and indeed, cannot allege) facts demonstrating that Defendant is entitled to statutory damages or attorneys' fees on its copyright claims; any supposed use by Plaintiff of copyrighted material took place before such material obtained copyright registration.

Lastly, Defendant's Counterclaims fail to allege sufficient allegations to support its New York State law unfair competition claims. In particular, the Counterclaims do not allege facts showing that the conduct affects consumers, or that this is anything more than a business dispute between companies. In any event, such State law claims are preempted by Federal copyright law, and Defendant cannot use such as a basis for New York unfair competition claims.

For these reasons, and those more fully described below, the Court should dismiss Defendant's Counterclaims in their entirety, with fees and costs awarded to Plaintiff.

2

## ARGUMENT

**I.      12(b)(6) STANDARD**

A District Court may dismiss a complaint under Federal Rule of Civil procedure 12(b)(6) if the factual allegations contained in the Complaint are not sufficient to state a claim for which relief may be granted that is plausible on its face. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1609 (2007); *Thompson v. V.E.W. Ltd*, 2007 WL 1746739, at *2 (S.D.N.Y. June 15, 2007). The Court must accept as true all factual allegations in the Complaint and view them in the light most favorable to the plaintiff. *Id.*; *Twombly*, 127 S.Ct. at 1965 n.3. While detailed factual allegations are not required, a plaintiff must provide sufficient factual allegations to establish grounds for entitlement to relief beyond mere labels and legal conclusions; a formulatic recitation of the elements of a cause of action is insufficient to overcome a motion to dismiss under Rule 12(b)(6). *Id.*

Courts in this District require that "a pleader … amplify a claim with some factual allegations in that context where such amplification is needed to render the claim plausible". *Dorcely v. Wyandanch Union Tree School Dist.*, 2007 WL 2815809 (E.D.N.Y. Sept. 25, 2007) (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2nd Cir. 2007)). Thus, pursuant to the dictates of *Twombly* and case law in the Second Circuit, a complaint must include "enough facts to nudge [Plaintiff's] claims across the line from conceivable to plausible". *Id. Twombly* and its progeny in the Second Circuit apply to trademark and trade dress infringement claims under the Lanham Act, as well as copyright claims. *Thompson Publishing Company, LLC v. Technology Evaluation Centers, Inc.*, 2007 WL 2193964 (S.D.N.Y. July 27, 2007); *Adams v. Warner Brothers Pictures Network*, 2007 WL 1959022 (E.D.N.Y. June 29, 2007); *Fitzpatrick v. Sony-*

*BMG Music Entertainment, Inc.*, 2007 WL 2398801 (S.D.N.Y. Aug. 15, 2007); *ATSI Communications, Inc. v. Shaar Fund Ltd.*, 493 F.3d 87 (2nd Cir. 2007).

In ruling on a motion under 12(b)(6), the Court may consider not only allegations made in the Complaint and any facts of which judicial notice may be taken, but may review and take into consideration any written instrument attached to the Complaint, or any documents incorporated or referenced in the Complaint. *Thompson*, 2007 WL 1746739, at *2. Furthermore, a complaint is deemed to include documents that a plaintiff either possessed, or knew about, or upon which it relied in bringing an action. *Rothman v. Gregor*, 220 F.3d 81, 88 (2nd Cir. 2000); *Mitra v. State Bank of India*, 2005 WL 2143144, at *2 (S.D.N.Y. Sept. 6, 2005); *Smith v. AVCS Intern., Inc.*, 148 F.Supp.2d 302, 307 (S.D.N.Y. 2001).

While a court must accept as true the factual allegations contained in a complaint, and draw inferences in favor of the pleader, a court need not accept unreasonable inferences or unwarranted deductions of fact, legal conclusions, opinions couched as factual allegations or unsupported conclusions of fact. *Smith*, 148 F.Supp.2d at 307; *Ravioli v. Gannett Co., Inc.*, 327 F.Supp.2d 233, 239 (W.D.N.Y. 2004). Nor is a court required to "swallow the plaintiff's invective hook, line and sinker; bald assertions, unsupportable conclusions, paraphrase circumlocutions, and the like need not be credited". *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996).

## II.    DEFENDANT'S COUNTERCLAIMS FAIL TO STATE A CAUSE OF ACTION FOR TRADEMARK INFRINGEMENT OR FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT

Defendant essentially alleges in its second Counterclaim that Plaintiff's use of its own senior registered trademark "Motor Up" on packaging/product cards for Plaintiff's automotive chemical additives products infringes Defendant's junior trademark "Beats the Bottled Boosters"

used in conjunction with Defendant's automotive chemical additive product, or constitutes false designation of origin under the Lanham Act.

Defendant cannot succeed in any claim of trademark infringement/false designation of origin against Plaintiff because Plaintiff's senior registered mark "Motor Up" predates Defendant's purported junior trademark "Beats the Bottled Boosters" by almost a decade, giving Plaintiff priority in use of its "Motor-Up" mark.

### A.   Plaintiff's Senior Trademark "MOTOR UP" has Priority Over Defendant's Junior Trademark "BEATS THE BOTTLED BOOSTERS".

It is unquestioned law that the right to exclusive use of a trademark derives from the mark's first appropriation and use in the marketplace. *H.W. Carter & Sons, Inc. v. William Carter Co.*, 913 F.Supp. 796, 802 (S.D.N.Y. 1996). Furthermore, Federal registration of a trademark creates a strong presumption of the validity of the mark, and the registrant's exclusive right to use the mark on goods or services specified in the registration. *Id.*; *Tactica Intern., Inc. v. Atlantic Horizon Intern., Inc.*, 154 F.Supp.2d 586, 599 (S.D.N.Y. 2001).

Federal trademark registration is *prima facie* evidence of the validity of a trademark and the registrant's exclusive right to use the mark. 15 U.S.C. §1057(b); *OBH, Inc. v. Spotlight Magazine, Inc.*, 86 F.Supp.2d 176, 187 (W.D.N.Y. 2000). Registered trademarks are presumed to be distinctive, and are afforded the utmost protection under Federal trademark law. *Lois Footwear v. Levi Straus*, 799 F.2d 867, 871 (2nd Cir. 1986).

In this instance, Plaintiff clearly has priority of use of its senior registered trademark "Motor Up" for automotive chemical additives over Defendant and its "Beats the Bottled Boosters" trademark, and the validity of Plaintiff's "Motor Up" trademark is incontestable. Plaintiff's predecessor-in-interest first used the "Motor Up" trademark in commerce for chemical

automotive additive products in October of 1995. <u>See</u> Declaration of Kevin J. Harrington in Support of Motion to Dismiss ("Harrington Dec."), at ¶¶5-6. Plaintiff's predecessor-in-interest obtained a trademark registration for the "Motor Up" trademark from the U.S. Patent & Trademark Office ("USPTO") on May 20, 1997. *Id.* Plaintiff's predecessor-in-interest filed a declaration of incontestability with the USPTO. The trademark "Motor Up" then became incontestable due to use in commerce for five (5) years. *Id.*

Registration and ownership of the mark was then transferred to Jordan Drew Corporation ("Jordan Drew"), and Jordan Drew licensed that mark for exclusive use in the United States to its related company, Plaintiff SAS. Harrington Dec., at ¶¶5-6. Therefore, under Federal law, Plaintiff's "Motor Up" trademark is an incontestable mark, its validity cannot now be challenged by Defendant, and Plaintiff's trademark "Motor Up" has priority over any later used mark for automotive chemical additives; like Defendant's "Beats the bottled Boosters" mark.

Defendant did not file for a trademark registration for its "Beats the Bottled Boosters" trademark until November 20, 2006. Harrington Dec., at ¶7. In its application to the USPTO, Defendant claimed a date of first use in commerce for its mark "Beats the Bottled Boosters" of June 24, 2005. *Id.*, at ¶7. Defendant did not obtain registration for its mark until April 2008. *Id.*, at ¶7.

Plaintiff clearly has priority of use of its senior registered trademark "Motor Up" for automotive chemical additives over Defendant's junior-in-time "Beats the Bottled Boosters" trademark: (1) Plaintiff's mark "Motor Up" has a date of first use in commerce that precedes Defendant's use of its mark by a decade, (2) Plaintiff obtained Federal registration of its mark "Motor Up" trademark a full decade before Defendant obtained registration for its "Beats the Bottled Boosters" mark, (3) Plaintiff's mark "Motor Up" is incontestable, and (4) Defendant's

mark has not obtained incontestable status; Defendant has not used the mark in commerce in the United States for five (5) years. Harrington Dec., at ¶7.

The fact that Plaintiff has a registered trademark for the mark "Motor Up", Plaintiff's "Motor Up" mark is incontestable, and Plaintiff's date of first use in commerce of its "Motor Up" mark predates Defendant's date of first use in commerce of Defendant's mark by a decade, precludes Defendant's Counterclaim for trademark infringement or false designation of origin under the Lanham Act regarding Plaintiff's use of its own senior mark "Motor Up". Defendant's Counterclaim for trademark infringement and false designation of origin under the Lanham Act regarding Defendant's junior mark should be dismissed on that basis alone.

**B.      Plaintiff's Registered Mark "MOTOR UP" is not Confusingly Similar to Defendant's Mark "BEATS THE BOTTLED BOOSTERS".**

Even if the Court were to find that Plaintiff does not have priority of use of its senior registered trademark "Motor Up" over Defendant's junior mark "Beats the Bottled Boosters", as a matter of law, those two marks are not confusingly similar.  The allegations in Defendant's Counterclaim for trademark infringement and/or false designation of origin are nothing more than conclusory allegations with no factual support whatsoever, especially regarding the alleged secondary meaning purportedly gained by Defendant's brand new descriptive mark.  Without factual allegations to support the assertion that Defendant's new mark has somehow obtained secondary meaning, Defendant's descriptive mark cannot obtain protection under the Lanham Act, and Defendant's trademark infringement/false designation of origin claim regarding its descriptive trademark "Beats the Bottled Boosters" must be dismissed.

In order to prevail on a claim for trademark infringement or false designation of origin under 15 U.S.C. §1125(a), a party must allege and prove that the infringing mark is likely to

cause consumers confusion as to the source or origin of the goods. *Nora Beverages, Inc. v. Perrier Group of America, Inc.*, 269 F.3d 114 (2nd Cir. 2001). There must be a probability of confusion, not merely a possibility of confusion, in order for a plaintiff to succeed on a claim under the Lanham Act. *Gruner Jahr USA Pub. v. Meredith Corporation*, 991 F.2d 1072 (2nd Cir. 1993). A court may determine, as a matter of law, that two marks are so dissimilar that there can be no likelihood of confusion regarding those marks. *American Cyanamid Corp. v. Connaught Laboratories, Inc.*, 800 F.2d 306, 309 (2nd Cir. 1986); *Metrokane, Inc. v. The Wine Enthusiast*, 160 F.Supp.2d 633, 636 (S.D.N.Y. 2001).

Courts in the Second Circuit apply a multi-factor test commonly known as the *Polaroid* test in evaluating likelihood of confusion under the Lanham Act. *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2nd Cir. 1961); *Star Industries, Inc. v. Bacardi & Co., Ltd.*, 412 F.3d 373, 384 (2nd Cir. 2005). In assessing similarity of marks, courts look to the overall impression created by the logos and the context in which they are found, and consider the totality of factors that can cause confusion among prospective purchasers. *Gruner*, 991 F.2d at 1078; *King Research, Inc. v. Shulton, Inc.*, 454 F.2d 66, 68 (2nd Cir. 1972). The prominent placement of one's own registered trademark on one's own packages can preclude a finding of likelihood of confusion. *Merriam-Webster, Inc. v. Random House, Inc.*, 35 F.3d 65, 71 (2nd Cir. 1994); *Nora Beverages*, 269 F.3d at 122; *Nabisco, Inc. v. Warner-Lambert Co.*, 220 F.3d 43, 46 (2nd Cir. 2000); *W.W.W. Pharmaceutical Co., Inc. v. Gillette Co.*, 984 F.2d 567, 573 (2nd Cir. 1993); *American Cyanamid*, 800 F.2d at 309; *AutoZone, Inc. v. Tandy Corp.*, 373 F.3d 786, 796 (6th Cir. 2004). This is particularly true when the house mark used is composed of drastically different typeface and style than the mark of the party claiming infringement.

Although Courts in the Second Circuit generally do not treat any one of the *Polaroid* factors as dispositive on the issue of likelihood of confusion, courts in the Second Circuit do focus on the ultimate question of whether consumers are likely to be confused. *Nabisco, Inc.*, 220 F.3d at 46. Accordingly, in a given case, the <u>dissimilarity</u> of the marks can be dispositive and warrant a finding, as a matter of law, that the marks are not confusingly similar. *Id.* A review of the marks themselves is the starting point for any analysis of the *Polaroid* factors. *Id.*

Here, there is no question that the stark *dissimilarity* of the marks at issue precludes a finding, as a matter of law, that consumers would likely be confused as between the Plaintiff's senior, registered fanciful trademark "Motor Up" and Defendant's junior descriptive mark "Beats the Bottled Boosters". As an initial matter, it is difficult to envision how Plaintiff's use of its registered mark "Motor Up" could infringe on or cause consumers confusion with regard to Defendant's junior "Beat the Bottled Boosters" mark, or as to three of the four product cards specifically referenced by Defendant in its First Amended Answer to Complaint with Counterclaims. <u>See</u> First Amended Answer to Counterclaims, Exhibits "B", "C" and "D". Those three product cards contain <u>no</u> reference whatsoever to Defendant's junior mark "Beats the Bottled Boosters". It is impossible to see how there could be a claim for false designation of origin or infringement under the Lanham Act by Defendant regarding its junior mark "Beats the Bottled Booster" when that mark appears nowhere on three of the four exhibits Defendant specifically references in its Counterclaims. Therefore, any alleged Lanham Act trademark infringement or false designation of origin with reference to those three of Defendant's product cards (or any package or marketing material without the mark at issue present) must be dismissed.

As to Defendant's claim of infringement or false designation of origin with respect to Exhibit "A", or any packaging or material containing the junior descriptive mark "Beats the Bottled Boosters", it is clear, as a matter of law, Defendant has no trademark infringement or false designation of origin claim regarding its junior "Beats the Bottled Boosters" mark. First, the trademarks have absolutely nothing in common with one another. Plaintiff's senior fanciful mark "Motor Up" contains not a single one of the words used in Defendant's junior mark "Beats the Bottled Boosters". Harrington Dec., at ¶¶8-11. This fact alone precludes Defendant from succeeding on its Counterclaim for infringement or false designation of origin.

Second, Defendant's "Beats the Bottled Boosters" mark uses all yellow letters with only the first word containing a capital letter. Harrington Dec., at ¶12. By contrast, Plaintiff's "Motor Up" mark is fire red with all capital letters, and is prominently displayed on the neck of the bottle-shaped product cards at issue. Harrington Dec., at ¶¶8-12. The two marks do not use similar fonts, typeface or colors, and are not the same in size. *Id.*

Lastly, Plaintiff's senior registered fanciful mark "Motor Up" is displayed in such a fashion that precludes confusion with Defendant's junior mark. In Plaintiff's mark, the word "Motor" is placed above, or rides on top of the large word "Up". *Id.* In essence, in Plaintiff's senior registered trademark, the word "Motor" acts as a bottle cap for the word "Up".

By contrast, Defendant's junior mark "Beats the Bottled Boosters" is simply a sentence or phrase placed on the side of the product card. Indeed, unlike Plaintiff's senior mark, Defendant's junior mark is not even placed on the image of the bottle contained on Defendant's product card.

Therefore, as a matter of law, Plaintiff's senior registered fanciful trademark "Motor Up" is so dissimilar in display and sound from Defendant's junior descriptive mark "Beats the Bottled

Boosters", that there can be no finding that the marks are confusingly similar, and Defendant's

Lanham Act claim against Plaintiff based on Defendant's junior trademark "Beats the Bottled

Boosters" must be dismissed.

### C.    Defendant's New Mark is Weak and not Deserving of Protection.

Even if the Court were to find that the marks are not dissimilar on their face, Defendant's

new weak, descriptive mark is not deserving of protection under the Lanham Act, and

Defendant's Counterclaim contains no factual allegations sufficient to support protection of

Defendant's weak, descriptive mark.

A mark's eligibility for trademark status, and degree of protection accorded the mark

depend on the mark's distinctiveness. *Playtex Products, Inc. v. Georgia Pacific, Inc.*, 2003 WL

21939706, at *4 (S.D.N.Y. Aug. 12, 2003). Descriptive marks constitute marks that describe a

product or its attributes, and are considered the second weakest category of mark; just above

unprotectable generic marks. *Id.*; *24 Hour Fitness USA v. 24/7 Tribeca Fitness, LLC*, 447

F.Supp.2d 266, 271 (S.D.N.Y. 2006); *PaperCutter, Inc. v. Fay's Drug Co., Inc.*, 900 F.2d 558,

563 (2nd Cir. 1990).

In this instance, Defendant's "Beats the Bottled Boosters" mark is nothing more than a

descriptive mark which describes the attributes of Defendant's automotive chemical additives

products; Defendant's product is a chemical additive tablet which supposedly increases the

octane level of car fuel beyond the increase obtained through use of bottled liquid octane

boosters.

Given that Defendant's mark is merely descriptive, it is not entitled to trademark

protection under the Lanham Act without allegations that support a finding that Defendant's

mark has acquired inherent distinctiveness through prominent use in commerce and a high

degree of consumer recognition. *Tony & Guy (USA) Ltd. v. Nature's Therapy, Inc.*, 2006 WL 1153354, at \*5 (S.D.N.Y. May 1, 2006).

Descriptive marks are traditionally disfavored under the law, have been granted only a minimum of protection under the Lanham Act, and only when secondary meaning has been alleged or shown. *Medical Economics Co., Inc. v. Prescribing Reference, Inc.*, 294 F.Supp.2d 456, 462 (S.D.N.Y. 2003). In order to establish secondary meaning, a party must allege that the mark comes to identify not only the goods, but the <u>source</u> of those goods. *Air Cargo News, Inc. v. Tabmag Pub., Ltd.*, 2007 WL 1101183, at \*8 (E.D.N.Y. April 11, 2007). Factors considered in determining whether a mark has obtained secondary meaning include (1) advertising expenditures; (2) consumer studies linking the mark to a source; (3) unsolicited media coverage of the product; (4) sales success; (5) attempts to plagiarize the mark; and (6) length and exclusivity of the mark's use. *Id.*

Here, Defendant's pleadings are conspicuously lacking of <u>any</u> factual allegations regarding secondary meaning of Defendant's "Beats the Bottled Boosters" mark. Defendant's Counterclaims contain <u>no</u> factual allegations regarding its "Beats the Bottled Boosters" trademark with respect to expenditures on advertising, unsolicited media inquiries, consumer studies, sales success, attempts to plagiarize the mark, or length and exclusivity of use for the mark. Indeed, Defendant's assertion of secondary meaning is a mere formulaic recitation, devoid of a single factual allegation to support such assertion; just the sort of vague, conclusory claim that is subject to dismissal under *Twombly*.

Arguably, Defendant cannot allege secondary meaning or distinctiveness for its "Beat the Bottled Boosters" mark as the overwhelming majority of Defendant's advertising and sales of its product occurs <u>overseas</u>, not in the United States. Harrington Dec., at ¶¶16-19. Such overseas

activity cannot be the basis for a claim of secondary meaning in the United States as to Defendant's "Beats the Bottled Boosters" mark.  Thus, Defendant's trademark infringement, false designation of origin Counterclaims regarding its junior trademark "Beats the Bottled Boosters" must be dismissed for failure of Defendant to allege facts justifying protection under the Lanham Act.

## III.  DEFENDANT HAS FAILED TO ALLEGE A TRADE DRESS INFRINGEMENT CLAIM.

Defendant apparently alleges a cause of action for false designation of origin with regard to what Defendant describes as the "Chemplex Trade Dress".  However, Defendant's Counterclaims about its "Chemplex Trade Dress" lack factual allegations justifying protection of this supposed "Chemplex Trade Dress" under the Lanham Act.  Furthermore, as a matter of law, Plaintiff's trade dress for its "Motor Up" fuel additives products is so dissimilar from Defendant's "Chemplex Trade Dress" that there is no likelihood of confusion between Plaintiff's trade dress and Defendant's, and therefore, any claim of Defendant's for trade dress infringement or false designation of origin should be dismissed.

To obtain trade dress protection under the Lanham Act, a party must allege and show (1) that its trade dress is entitled to protection under the Act (the dress is inherently distinctive), and (2) that a defendant's trade dress infringes on the plaintiff's dress by creating a likelihood of confusion.  *Landscape Forms, Inc. v. Columbia Cascade Co.*, 113 F.3d 373, 377 (2nd Cir. 1997). *Crown Awards, Inc. v. Trophydepot*, 2003 WL 22208409, at *18 (E.D.N.Y. Sept. 3, 2003).  Even if a plaintiff succeeds in the first part of the test, a plaintiff's claims will fail if the features of the claimed dress are functional.  *Id.*  Where trade dress has not been registered, the party must demonstrate and allege that the claimed trade dress is not functional.  *Id.*  Courts will not allow a

party to claim trade dress for qualities of dress that would deprive competitors of alternative designs and foreclose competition from the relative market. *Id.* The non-functionality requirement protects competition, and precludes unjustified monopoly, even at the cost of potential consumer confusion. *Landscape*, 113 F.3d at 379.

When a party is attempting to obtain trade dress protection for an entire line of products, that party has a significant challenge, and must show that the appearance of its packaging for several product lines is sufficiently distinct and unique to merit protection as a recognizable trade dress. *Regal Jewelry Co., Inc. v. Kingsbridge Intern., Inc.*, 999 F.Supp. 477, 486 (S.D.N.Y. 1998); *Disney v. Goodtimes Home Video Corp.*, 830 F.Supp. 762, 766 (S.D.N.Y. 1993). Plaintiff has the burden to articulate a specific trade dress, and demonstrate that it has in fact consistently used that trade dress across the entire product line. *Regal Jewelry*, 999 F.Supp. at 486. Furthermore, a party seeking trade dress protection must articulate in its pleadings with detailed specificity the features that compose the trade dress. *Yurman Design, Inc. v. PAJ, Inc.*, 262 F.3d 101, 117 (2nd Cir. 2001). Failure to articulate with specificity the inherently distinctive aspects of a party's trade dress, failure to articulate the specific elements of the dress, and failure to allege a precise expression of the character and scope of the claimed trade dress, precludes protection for such dress under the Lanham Act, and requires dismissal of the claim. *Id.*; *Thompson*, 2007 WL 1746739, at *3.

**A.**    **Defendant's Trade Dress Claim Fails for Lack of Specific Factual Allegations About the Protectable Character and Scope of its Chemplex Trade Dress.**

Defendant's Counterclaim for trade dress infringement or false designation of origin regarding its supposed "Chemplex Trade Dress" fails for lack of specific factual allegations regarding the protectable, distinct aspects of its trade dress. First, Defendant's Counterclaim for trade dress protection under the Lanham Act alleges only that Defendant's trade dress for its

product line (including both its "Beats the Bottled Boosters" tablets and "Dyno-Tab" tablets) is made up of a blister pack containing a tablet attached to a bottled shaped card, or card displaying a picture of the bottle. Such generic pleading of trade dress fails under *Twombly*.

Second, Defendant cannot obtain trade dress protection regarding the blister pack aspect of its packaging; as a matter of law, the blister pack is nothing more than a functional aspect of Defendant's packaging and cannot be accorded trade dress status. Courts have consistently held that generic see-through cellophane wrappers which allow the consumer to see the product cannot be considered protectable trade dress. *Price Food Co. v. Good Foods, Inc.*, 400 F.2d 662 (6th Cir. 1968); *Club Protector, Inc. v. J.G. Peta, Inc.*, 2001 WL 1217215, at *2 (N.D.N.Y. Sept. 12, 2001); *Jeffrey Milstein, Inc. v. Greger, Lawlor, Roth, Inc.*, 58 F.3d 27, 33 n.4 (2nd Cir. 1995); *Malaco Leaf, AB v. Promotion In Motion, Inc.*, 287 F.Supp.2d 355, 373 (S.D.N.Y. 2003).

The blister pack on Defendant's product cards to which it claims trade dress rights is nothing more than a generic see-through cellophane window that allows a prospective buyer to view the actual chemical additive tablet through a cellophane packet attached to the card. Defendant alleges nothing distinct about this blister pack wrapper, or how Plaintiff's use of such a generic feature infringes Defendant's trade dress. Indeed, to stop competitors (like Plaintiff) from being allowed to provide consumers with the ability to see the actual product by means of a see-through cellophane blister pack on a product card would put competitors at a significant non-reputation related disadvantage by precluding the consumer from seeing the actual chemical tablet. Therefore, as a matter of law, the see-through blister pack aspect of Defendant's claimed trade dress cannot be accorded protection under the Lanham Act, and cannot be a basis for Defendant's trade dress claim.

Third, Defendant has mischaracterized the actual trade dress at issue. Despite Defendant's representations that part of its trade dress is a bottle shaped product card, the exhibits attached to Defendant's own Answer and Counterclaims show this to be <u>false</u>. None of the four exhibit product cards attached to Defendant's Answer and Counterclaims are actually bottled shaped cards. Defendant's Counterclaims do not describe or reference any bottle-shaped product cards. Rather, all four of these cards contain only an <u>image</u> of either a bottle in one of several different shapes <u>or</u> a plastic red gas can. As none of the Defendant's product cards are bottle shaped, Defendant cannot claim a bottle shaped product card as part of its "Chemplex Trade Dress" for its automotive chemical additive tablets.

Fourth, Defendant cannot claim that the unique image of a bottle on a card is a uniform aspect of its trade dress for its family of automotive gas additive products. As described above, and demonstrated in the exhibits attached to Defendant's Answer and Counterclaims, at least one of the images represented on its product cards is <u>not</u> a bottle at all, but a red plastic <u>gas</u> <u>can</u>. Moreover, the images of bottles and gas can contained on the product cards are not uniform; two images are of small, red symmetrical bottles, and one image is of a much larger orange/red asymmetrical bottle, and the fourth image is of a gas can of an entirely different size and shape. Therefore, Defendant cannot obtain trade dress protection for the image of a bottle on Defendant's packaging as Defendant has failed to allege (and cannot allege) that it has consistently displayed the picture of a similar, unique bottle on all of its product cards for its family of gas additive tablets.

Even if the Court were to find that Defendant's trade dress includes the image of a bottle, as a matter of law, Plaintiff's "Motor Up" trade dress cannot be seen to infringe upon Defendant's "Chemplex Trade Dress". It is clear from a simple review of Plaintiff's "Motor Up"

product cards that Plaintiff <u>does</u> <u>not</u> display the image of a bottle on a rectangular card as do the Chemplex products. Rather, unlike Defendant's product cards, Plaintiff's product cards are <u>actually</u> in the free-form shape of a bottle. Harrington Dec., at ¶¶8-11. Furthermore, unlike Defendant's product cards for Defendant's products, Plaintiff's product cards are <u>all</u> uniform in size and shape. *Id.* Defendant's cards, by contrast, are either squares or rectangles, and vary drastically in size, both width and length.

More importantly, Plaintiff's product cards for its "Motor Up" line of chemical additives all prominently display the "Motor Up" registered trademark, both front and back. This prominent display of Plaintiff's senior registered trademark precludes a finding of false designation of origin or infringement under the Lanham Act.

Lastly, Plaintiff's product cards for its "Motor Up" line of chemical additive products are completely dissimilar to Defendant's in terms of color scheme, and size, as well as presentation of the chemical additive tablets. Plaintiff's "Motor Up" product cards present a curved bottle with a golden, purple or grey/silver hue; the bottles are all the same size and shape. Imposed upon that bottle is the "Motor Up" mark in fire red with the word "Motor" riding on top of the word "Up" like a bottle cap. Harrington Dec., at ¶¶8-11. The chemical tablets on Plaintiff's product cards are round, and have a dark red or maroon hue. *Id.*

In contrast, Defendant's product card for its "Beats the Bottled Boosters" product has a black background with a reddish orange depiction of an asymmetrical bottle; unlike any of Plaintiff's product cards. Harrington Dec., at ¶12. The tablets on Defendant's "Beats the Bottled Boosters" card are a hexagonal shape and deep orange in color with gold sparkles, unlike the shape or color of the tablets on Plaintiff's product cards.

Defendant's "Dyno-Tab Fuel Stabilizer" product card has a large red plastic gas can on it, along with red lettering; the card does not contain the image of a bottle and is about half as big as Defendant's "Beats the Bottled Boosters" product card. Harrington Dec., at ¶13. Defendant's "Dyno-Tab" trademark is prominently displayed on the card in multiple places. The card contains eight cream colored product tablets in blister packs on the card; unlike the presentation of Plaintiff's Motor Up" product cards, and unlike the presentation on Defendant's own "Beats the Bottled Boosters" product card.

Defendant's "Gas Treatment" product card has the depiction again, of a red bottle on an aqua background with two hexagonal shaped, burnt orange tablets displayed on the card. Harrington Dec., at ¶¶14-15. The product card is not the same shape as Defendant's other product cards (or Plaintiff's), does not contain the same color scheme as Defendant's other product cards (or Plaintiff's), and contains the "Dyno-Tab" trademark in various places (unlike Plaintiff's).

It is clear from even the most cursory look at Defendant's family of product cards that no consumer could confuse Defendant's widely varying product cards of Defendant's products with Plaintiff's uniform bottle-shaped product cards, and Plaintiff's cards do not suggest to a consumer that Plaintiff's product is of the same origin as Defendant's.

Therefore, Defendant's Counterclaim for false designation of origin with regard to its purported "Chemplex Trade Dress" must be dismissed.

## IV.    DEFENDANT HAS FAILED TO ALLEGE SUFFICIENT FACTS TO STATE A CLAIM FOR COPYRIGHT INFRINGEMENT

Defendant alleges a claim for copyright infringement regarding Plaintiff's supposed use and copying of Defendant's Booster product sheet, Stabilizer product sheet, Booster product card

and Stabilizer product card. However, Defendant's claim for copyright infringement fails because there is <u>not</u> a single factual allegation in the Counterclaims indicating what, if anything, Plaintiff actually copied of Defendant's.

To bring a copyright claim, a plaintiff must allege infringement through demonstration that (1) it has ownership of a valid copyright; and (2) Defendant's copying of constituent elements of the work that are original. *Phillips v. Murdock*, 2008 WL 852019, at *4 (D.Hawaii March 28, 2008). To comply with the dictates of *Twombly* and Federal Rule of Civil Procedure 12(b)(6) and 8, a party must allege or delineate the text or item supposedly copied by the defendant that is the basis of its copyright claim. *Id.,* at *7. Failure to delineate the text of original protectable material that was allegedly copied and is the basis of a copyright claim, subjects that claim to dismissal under Federal Rule of Civil Procedure 12(b)(6) and 8(a)(2). *Id.*

Here, Defendant's Complaint contains not a single factual allegation suggesting exactly what original protectable material of Defendant's was copied by Plaintiff from Defendant's Booster product sheet, Stabilizer product sheet, Booster product card and Stabilizer product card. Defendant's allegation for its copyright Counterclaim is simply a single conclusory allegation of copying by Plaintiff without delineation of what was copied, or even if what was copied is actually original and protectable. As such, Defendant's Counterclaim for copyright infringement must be dismissed.

## V.    DEFENDANT HAS FAILED TO ALLEGE A CLAIM FOR STATUTORY DAMAGES AND ATTORNEYS' FEES UNDER FEDERAL COPYRIGHT LAW

In its first Counterclaim, Defendant alleges a cause of action for copyright infringement against Plaintiff. Defendant further alleges claims for statutory damages and attorneys' fees under 17 U.S.C. §§504(c) and 505, respectively. The allegations in Plaintiff's Complaint, as

admitted by Defendant, and Defendant's own allegations in its Answer and Counterclaims, precludes the awarding of statutory damages and attorneys' fees for any alleged copyright infringement by Plaintiff, and requires dismissal of such claims.

The Copyright Act permits the holder of a valid copyright to claim, at his or her election, either actual damages and profits, or statutory damages from the infringing party. 17 U.S.C. §504; *Secunda v. Time Warner Cable of New York City*, 1995 WL 675464, at *2 (S.D.N.Y. Nov. 14, 1995); *Ez-Tixz, Inc. v. Hit-Tix, Inc.*, 919 F.Supp. 728, 735 (S.D.N.Y. 1996). Statutory damage or attorneys' fees may <u>only</u> be obtained if (1) the Plaintiff demonstrates infringement of copyright in a protectable work that commenced <u>after</u> the effective date of registration, or (2) infringement of copyrighted material that commenced after first publication of the work and before the effective date of the registration, <u>if</u> such registration is made within three months after first publication of the work. *Id.*; *Jamison Business Systems, Inc. v. Unique Software Support Corp.*, 2005 WL 1262095, at *2 (E.D.N.Y. May 26, 2005).

In this instance, it is clear that Defendant will not be entitled to statutory damages or attorneys' fees under the Copyright Act. Defendant alleges in its Counterclaims that it created and published the content of its Booster product sheet in early 2005, its Stabilizer product sheet in early 2005, its Booster product card in early 2005, its Stabilizer product card in early 2005. Defendant admits it did not register any of these items with the copyright office until no earlier than December 2007; more than two years after first publication of that material. (Indeed, Defendant did not register this material with the copyright office until two months <u>after</u> Plaintiff initiated this action.) Defendant has also admitted that before November 1, 2007, one of its officers threatened Plaintiff at a trade show, and accused Plaintiff of violating Chemplex's intellectual property rights in the materials at issue in this action. Defendant also alleges (and

admits) that on November 1, 2007, after seeing Plaintiff's materials at a trade show, Defendant had its counsel send Plaintiff a threatening cease and desist letter regarding Plaintiff's supposed use of Defendant's intellectual property.  Harrington Dec., at ¶¶3-4.

Defendant's admissions and allegations in its Answer and Counterclaims clearly preclude Defendant from obtaining statutory damages or attorneys' fees regarding any alleged copyright infringement by Plaintiff: (1) Defendant published the work at issue in early 2005; (2) Defendant did not register the work with the copyright office until two years later (more than three months after first publication); (3) Plaintiff allegedly first used/copied Defendant's material before that material was registered with the copyright office.  Under the Copyright Act, Defendant is not entitled to statutory damages or attorneys' fees, and those aspects of its copyright claim must be dismissed.

## VI.    DEFENDANT HAS FAILED TO STATE A CAUSE OF ACTION UNDER EITHER NEW YORK STATUTORY LAW OR NEW YORK COMMON LAW FOR UNFAIR COMPETITION

Defendant has also alleged claims for unfair competition under GBL §349 and New York common law.  However, Defendant's Counterclaims show that this is nothing more than a business dispute between competitors that does not impact the public in the manner required under New York law.  Defendant's conclusory allegations and lack of any factual allegations in support of these claims doom its New York unfair competition claims to dismissal.

To be successful under GBL §349, a plaintiff must allege and prove the three elements: (1) the challenged act of practice was consumer oriented; (2) that it was misleading in a material way; and (3) that plaintiff suffered injury as a result of the deceptive act.  *Freefall Express, Inc. v. Hudson River Park Trust*, 2007 WL 2582222 (N.Y. Sup. Ct. Sept. 7, 2007).  The statute is consumer oriented and while it does not necessarily preclude application to disputes between

businesses, the consumer oriented nature of the statute severely limits its application in such cases. *Id.* Furthermore, businesses are not the type of small individual consumers the statute was intended to protect. *Id.*

Courts have also held that the standards for bringing a claim under the Lanham Act are substantially the same as those applied to claims under New York common law for unfair competition or §349. *24 Hour Fitness*, 447 F.Supp.2d at 288; *Avon Products, Inc. v. S.C. Johnson & Son, Inc.*, 984 F.Supp. 768, 800 (S.D.N.Y. 1997). Generally, unfair competition claims under New York law are preempted by copyright law when based upon the same underlying facts. *Thompson*, 2007 WL 2193964; *Ez-Tixz, Inc.*, 919 F.Supp. at 738.

In this instance, Defendant's Counterclaims for unfair competition under New York State law are nothing more than copyright infringement claims cloaked under conclusory allegations of New York State law unfair competition claims. Such claims are preempted under Federal copyright law.

Indeed, Defendant's unfair competition Counterclaims are simply a dispute between business entities which has <u>nothing</u> to do with consumers or consumer protection. Defendant fails to allege anything misleading or consumer oriented about this dispute. Moreover, Defendant has failed to allege at all how the public has been defrauded or put at risk through any of the conduct alleged against Plaintiff in these claims. In fact, as demonstrated above, Plaintiff's trademark "Motor Up" and trade dress are not confusingly similar to Defendant's, and do not constitute false designation of origin. As such, the Court should dismiss Defendant's State law claims for unfair competition.

Lastly, given Defendant's failure to properly allege Federal causes of action for copyright infringement and false designation of origin, the Court need not entertain Defendant's State law causes of action by themselves pursuant to 28 U.S.C. §1367.

## CONCLUSION

For the reasons stated above, and those described in the accompanying Declaration of Kevin J. Harrington, Defendant's Counterclaims for false designation of origin, copyright infringement, and unfair competition under New York law should be dismissed in their entirety, with fees and costs to Plaintiff.

Dated:  White Plains, New York
       May 8, 2008

                        Respectfully submitted,


                          s/ Kevin J. Harrington
                       _____
                       Kevin J. Harrington
                       John T. A. Rosenthal
                       HARRINGTON, OCKO & MONK, LLP
                       Attorneys for *Plaintiff*
                       *SAS GROUP, INC.*
                       81 Main Street, Suite 215
                       White Plains, New York 10601
                       Telephone:  (914) 686-4800
                       Facsimile:   (914) 686-4824