

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
SAS GROUP, INC., a New York corporation,

                       Plaintiff,

     -against-

CHEMPLEX AUTOMOTIVE GROUP, INC., a
California corporation,

                   Defendant.
--------------------------------------------------------------------x

ECF CASE

Civil Action No.
07 CV 10262 (SCR)

**DECLARATION OF KEVIN J. HARRINGTON IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS DEFENDANT'S COUNTERCLAIMS**

     I, KEVIN J. HARRINGTON, declare under penalty and perjury of the laws of the United States that the following is true and correct, and that this Declaration was executed on May 8, 2008 at White Plains, New York:

     1.     I am a member of the law firm Harrington, Ocko & Monk, LLP, counsel for Plaintiff, SAS GROUP, INC. ("SAS" or "Plaintiff") in the above-captioned matter. I submit this Declaration in support of Plaintiff's motion to dismiss Defendant, CHEMPLEX AUTOMOTIVE GROUP, INC.'s ("Chemplex" or "Defendant") Counterclaims, and make such Declaration after review of our files in this matter.

     2.     I submit this Declaration in order to provide the Court with true and correct copies of several documents which relate to this motion seeking to dismiss Defendant's Counterclaims under Federal Rule of Civil Procedure 12(b)(6), documents specifically referenced or incorporated by reference in Plaintiff's Complaint for Declaratory Judgment, Defendant's First Amended Answer and Counterclaims to Plaintiff's Complaint, and upon which Defendant relied or were in Defendant's possession, custody or control when Defendant brought its Counterclaims against Plaintiff.

3.      Annexed hereto as Exhibit "A" is a true and correct copy of the November 1, 2007 letter from Jeffrey L. Van Hoosear of Knobbe Martens Olson & Bear, LLP, counsel for Defendant Chemplex.   Such letter is specifically referenced in Plaintiff's Complaint for Declaratory Judgment at ¶10, and Defendant relied on such letter in bringing this action.   The letter reflects the fact that prior to November 1, 2007, an officer of Defendant Chemplex threatened an intellectual property lawsuit against Plaintiff for alleged use of Defendant's intellectual property.   See Complaint, at ¶9.   Defendant has admitted that this interaction took place prior to November 1, 2007.   See Defendant's First Amended Answer and Counterclaims, at ¶9.

4.      As indicated in the allegations in Plaintiff's Complaint and Defendant's First Amended Answer to Complaint with Counterclaims, Defendant has admitted that the copyrighted material at issue in Defendant's Counterclaims was created and published in early 2005, but Defendant did not obtain copyright registration of such material until December 27, 2007 and January 2, 2008; almost two months after Plaintiff brought this action.   Therefore, according to the allegations in Plaintiff's Complaint and Defendant's Answer and Counterclaims, Defendant did not obtain copyright registration for the material at issue within three (3) months of first publication, and any alleged use by Plaintiff of such copyrighted material took place after first publication of that material but before that material was registered with the United States Copyright Office.   See First Amended Answer with Counterclaims, at ¶¶6-9.

5.      Attached hereto as Exhibit "B" is a true and correct copy of the Trademark Principal Register Registration No. 2,062,947 for the registered trademark "Motor Up".   The mark is registered for chemical motor oil additives in International Class No. 1, U.S. Classes Nos. 1, 5, 6, 10, 26 and 46.   The registration of Plaintiff's trademark for "Motor Up" is

referenced in ¶3 of Plaintiff's Complaint for Declaratory Judgment, and is referenced in Defendant's First Amended Answer and Counterclaims. First Amended Answer, at ¶¶12, 13, 29.

6.     Attached hereto as Exhibit "C" is a true and correct copy of the Trademark Electronic Search System ("TESS") printout for the registered trademark "Motor Up". The fact that the Motor Up" trademark is registered with the USPTO is referenced in ¶¶3, 7, 14, 15 and 16 of Plaintiff's Complaint for Declaratory Judgment, and is referenced in ¶¶13, 14 and 29 of Defendant's First Amended Answer to Complaint with Counterclaims. As indicated on the TESS printout, Plaintiff's predecessor-in-interest filed for trademark registration of the mark "Motor Up" on March 26, 1996. The mark was registered with a date of first use in commerce of October 29, 1995. Registration for the mark was obtained on May 20, 1997. The registrant, Motor Up Corporation, assigned the "Motor Up" mark to Jordan Drew Corporation ("Jordan Drew"). Jordan Drew licensed the mark for exclusive use by SAS.

7.     Attached hereto as Exhibit "D" is a true and correct copy of the trademark registration printout from the USPTO for Defendant's trademark "Beats the Bottled Boosters". Defendant's registration for this mark is specifically referenced in ¶11 of Defendant's First Amended Answer to Complaint with Counterclaims. Defendant relied on such registration in bringing its Counterclaims. As indicated in the printout, Defendant first applied for registration of its "Beats the Bottled Boosters" mark on November 27, 2006. Defendant asserts a date of first use in commerce for the mark of June 24, 2005; almost a decade after Plaintiff's declared first use in commerce date of its "Motor Up" mark. Defendant claims use of the mark for International Class 1; the same class as Plaintiff's "Motor Up" mark. Defendant did not obtain a Federal Trademark Registration for its "Beats the Bottled Boosters" mark until April 2008. Pursuant to Federal Trademark Law, Defendant does not have an incontestable mark as such

mark has not been used in commerce for five (5) years.

8.      Attached hereto as Exhibit "E" is a true and correct copy of the product card for Plaintiff's "Motor Up Fuel Up" octane booster tablet.   This product card is referenced or incorporated by reference in Plaintiff's Complaint for Declaratory Judgment at ¶¶12, 14, 15 and 16, and Defendant's First Amended Answer to Complaint with Counterclaims at ¶¶13, 14 and 29.   The product card is exactly 8-1/4" in length, and 4-1/2" in width.   The product card is in the shape of a bottle, and contains Plaintiff's senior registered mark "Motor Up" in fire red lettering on the neck of the card.   The card is presented in yellow golden with a see-through cellophane blister pack containing a single burnt red or maroon circular tablet.   The card also contains the "Motor Up" trademark on the back of the card on the neck of the card.   The "Motor Up" mark is presented in all capital letters, with the word "Motor" riding on top of the word "Up"; the word "Motor" essentially acts like a bottle cap on the word "Up".   In addition, the mark "Fuel Up" is presented in white and red letters on both the front and the back of the card.

9.      Attached hereto as Exhibit "F" is a true and correct copy of Plaintiff's product card for its "Octane Booster" product.   This product card is referenced or incorporated by reference in Plaintiff's Complaint for Declaratory Judgment at ¶¶12, 14, 15 and 16, and Defendant's First Amended Answer to Complaint with Counterclaims at ¶¶13, 14 and 29.   This product card is in the shape of a bottle, and has exactly the same dimensions as the "Motor Up Fuel Up" product card.   This product card contains the "Motor Up" trademark on the neck of the bottle on both the front and the back of the product card.   The card is purple with a see-through cellophane blister pack containing a single tablet which is again burnt red or maroon in color.

10.     Attached hereto as Exhibit "G" is a true and correct copy of Plaintiff's "Motor Up Fuel Stabilizer" product card.   This product card is referenced or incorporated by reference in

4

Plaintiff's Complaint for Declaratory Judgment at ¶¶12, 14, 15 and 16, and Defendant's First Amended Answer to Complaint with Counterclaims at ¶¶13, 14 and 29.  This product card is also in the shape of a bottle, has exactly the same dimensions as Plaintiff's other two "Motor Up" product cards, and has the senior registered trademark "Motor Up" on the neck of the bottle on both sides of the product card.  The card is presented in grey/silver with four see-through cellophane blister packs containing the tablets which are burnt red or maroon in color.

11.    Attached hereto as Exhibit "H" is a true and correct copy of Plaintiff's "Motor Up Fuel Injector" product card.  This product card is referenced or incorporated by reference in Plaintiff's Complaint for Declaratory Judgment at ¶¶12, 14, 15, and 16; and Defendant's First Amended Answer to Complaint with Counterclaims at ¶¶13, 14 and 29.  This product card also contains Plaintiff's senior registered trademark "Motor Up" on the neck of the bottle on both sides of the product card.  The card is presented in black with a single see-through cellophane blister pack containing a single reddish circular tablet.  The product card is exactly the same dimensions as Plaintiff's other three product cards for Plaintiff's gas additive products.

12.    Attached hereto as Exhibit "I" is a true and correct copy of Defendant's "Beats the Bottled Boosters" product card.  This product card is referenced or incorporated by reference in Defendant's First Amended Answer to Complaint with Counterclaims at ¶10.  This product card is not in the shape of a bottle, in contrast to Plaintiff's product cards for Plaintiff's "Motor Up" line of automotive gas additive products.  Instead, Defendant's product card is a large rectangle with the contrived image of a bottle imposed upon the rectangular card; the card is approximately 10½ inches by 4½ inches.  Unlike Plaintiff's product cards, Defendant's product card contains no reference to the mark "Motor Up".  Defendant's product card for its "Beats the Bottled Boosters" contains a representation or image of a reddish orange bottle with a black

background; none of Plaintiff's product cards contain a black background or has the image of an asymmetrical orange bottle. Defendant's "Beats the Bottled Boosters" product cards contain two cellophane blister packs which are hexagonal in shape, and contain two hexagonal tablets which are bright burnt orange in color with gold sparkles. Defendant's "Beats the Bottled Boosters" product card also contains not one, but eight (8) references to Defendant's registered trademark "Dyno-Tab". Defendant's two trademarks ("Beats the Bottled Boosters" and "Dyno-Tab") are both represented in yellow or black lettering, unlike Plaintiff's "Motor Up" trademark which is represented in fire red. Defendant's "Beats the Bottled Boosters" mark also contains only a single capital letter, and is represented as a phrase on the side of the product card, not placed directly on the image of the bottle. Defendant's card also contains folds and perforations to allow the card to be turned into a funnel; Plaintiff's product cards for "Motor Up" contain no such folds or perforations, and are not designed to be turned into a funnel.

13.    Attached hereto as Exhibit "J" is a true and correct copy of Defendant's "Dyno-Tab Fuel Stabilizer" tablets card. This card is referenced or incorporated by reference in ¶10 of Defendant's First Amended Answer with Counterclaims. This product card does not contain the image of a bottle. Rather, the product card contains the image of a plastic <u>red gas can</u>. The product card also contains the trademark "Dyno-Tab" in not one, but six (6) places represented in golden yellow letters, bordered by red, or simply black letters. This product card makes no reference to Defendant's "Beats the Bottled Boosters" trademark. The card contains no reference to Plaintiff's mark "Motor Up". The card is half the size of Defendant's "Beats the Bottled Boosters" octane booster card; approximately 6 inches by 4 inches. The product card contains eight small circular blister packs with tablets that are a cream color with burnt orange spots. This product card does not present to the consumer the same images, words, or marks as

those contained in Defendant's "Beats the bottled Boosters" card.  This product card clearly demonstrates that Defendant's trade dress for its product line of gas additive tablets is not uniform, does not contain consistent features, and does not clearly indicate to potential consumers that the products are from a single source without detailed inspection of the card.

14.    Attached hereto as Exhibit "K" is a true and correct copy of Defendant's "Gas Treatment" product card, referenced in Defendant's First Amended Answer and Counterclaims at ¶10.  This product card, like Defendant's other product cards, is not in the shape of a bottle. Rather, the product card contains the superimposed image of a small red bottle on the card.  The red bottle image is placed on an aqua blue background.  None of Plaintiff's product cards contain the image of a red bottle, and none contain aqua blue as a color.  The product card also contains the trademark "Dyno-Tab".  This product card makes absolutely no reference to Defendant's "Beats the Bottled Boosters" trademark, and contains no reference to Plaintiff's mark "Motor Up".  This product card is much larger than Defendant's "Fuel Stabilizer" product card, but smaller than Defendant's "Beats the Bottled Boosters" product card; approximately 9 inches by 4 inches.  The card contains two hexagonal see-through blister packs with tablets that are a burnt orange color.  The product card references Defendant's "Dyno-Tab" mark five (5) times, unlike Defendant's "Beats the Bottled Boosters" product card, or "Fuel Stabilizer" product card and displays the mark in yellow lettering on the front of the package.

15.    The drastic variation in Defendant's various product cards for its automotive line of gas additive products precludes a finding, as a matter of law, that such product cards present uniform, unique, recognizable trade dress features to consumers across an entire product line such that consumers would immediately assume or recognize that the source of the product was from a single seller, manufacturer or producer.  Furthermore, Defendant's product cards do not

remotely resemble Plaintiff's "Motor Up" product cards, as none of Defendant's product cards are presented in the shape of a bottle, none of Defendant's product cards contain color schemes similar to Plaintiff's product cards, Plaintiff's product cards all contain the senior registered "Motor Up" trademark prominently displayed on both the front and the back of the card, and Plaintiff's product cards all contain see-through cellophane blister packs containing a burnt red or maroon tablet, as opposed to Defendant's product cards which present either a burnt orange hexagonal tablet or small cream colored circular tablets.

16.     Defendant asserts that it has established secondary meaning in the marketplace for its "Beats the Bottled Boosters" line of gas additive products by virtue of substantial use, sale and promotion of such products.  However, the vast majority of Defendant's advertising and marketing for its "Beats the Bottled Boosters" product and "Dyno-Tab" line of products is done in overseas markets, not U.S. markets.  Attached hereto as Exhibit "L" is a true and correct copy of a webpage for the website www.powerandperformanceproducts.co.uk.  Such marketing and advertising for Defendant's "Beats the Bottled Boosters" mark and trade dress is referenced in Defendant's First Amended Answer and Counterclaims at ¶¶10, 28.  This website clearly indicates that Defendant's "Beats the Bottled Boosters" mark and trade dress is promoted in the United Kingdom, not the United States.  Any promotional marketing or other expenditures by Defendant for promotion of its "Beats the Bottled Boosters" mark and trade dress or "Dyno-Tab" mark or trade dress in the United Kingdom or other countries overseas, does not constitute advertising, marketing expenditures or sales for purposes of establishing secondary meaning of Defendant's "Beats the Bottled Boosters" and "Dyno-Tab" marks and trade dress in the United States.

17.     Attached hereto as Exhibit "M" is a true and correct copy of a webpage from the

8

www.ready2race.co.uk. Defendant's First Amended Answer to Complaint with Counterclaims at ¶¶10, 28. Like Exhibit "L" above, Exhibit "M" is an advertisement and/or marketing promotion for Defendant's "Beats the Bottled Boosters" mark in the United Kingdom, not in the United States.

18.     Attached hereto as Exhibit "N" is a true and correct copy of a webpage for the website www.dynotab.com/tradeshows. Defendant's First Amended Answer to Complaint with Counterclaims at ¶¶10, 28. Exhibit "N" again reflects the fact that Defendant markets and advertises the "Beats the Bottled Boosters" mark overseas, as opposed to the United States. Any promotional marketing or other expenditures by Defendant for promotion of its "Beats the Bottled Boosters" mark and trade dress or "Dyno-Tab" mark or trade dress in the United Kingdom or other countries overseas, does not constitute advertising, marketing expenditures or sales for purposes of establishing secondary meaning for Defendant's "Beats the Bottled Boosters" and "Dyno-Tab" marks and trade dress in the United States.

19.     Attached hereto as Exhibit "O" is a true and correct copy for the webpage of www.dynotab-mena.com. Defendant's First Amended Answer to Complaint with Counterclaims at ¶¶10, 28. This exhibit further reflects the fact that Defendant predominantly markets and advertises the "Dyno-Tab" mark overseas, as opposed to the United States. Any promotional marketing or other expenditures by Defendant for promotion of its "Beats the Bottled Boosters" mark and trade dress or "Dyno-Tab" mark or trade dress in the United Kingdom or other countries overseas, does not constitute advertising, marketing expenditures or sales for purposes of establishing secondary meaning of Defendant's "Beats the Bottled Boosters" and "Dyno-Tab"

9

marks and trade dress in the United States.

Dated:  White Plains, New York
        May 8, 2008

                                        s/ Kevin J. Harrington
                                   _____

                                   Kevin J. Harrington